UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Lena Jennott
_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

Fox News Network LLC
Fox Business Channel
_____

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. Typically, the company or organization named in your charge to the Equal Employment Opportunity Commission should be named as a defendant. Addresses should not be included here.)*

RECEIVED
SDNY PRO SE OFFICE

2016 JUN 28  PM 4: 09

S.D. OF N.Y.

Amended
**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial: ☒ Yes  ☐ No
*(check one)*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/8/16

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

☒  Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).
   **NOTE:** *In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

☐  Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634.
   **NOTE:** *In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.*

☐  Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117.
   **NOTE:** *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

☒  New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic chacteristics, marital status).

☒  New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 (actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status).

I. **Parties in this complaint:**

A. List your name, address and telephone number. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff
Name Lena Jemmott
Street Address 102-22 188th Street
County, City Hollis
State & Zip Code NY 11423
Telephone Number 917-238-7486

B. List all defendants' names and the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant
Name Fox News Network LLC
Street Address 1211 Avenue of the Americas
County, City New York
State & Zip Code NY, 10036
Telephone Number 212-301-6000

C. The address at which I sought employment or was employed by the defendant(s) is:

Employer Fox News Network LLC / Fox Business
Street Address 1211 Avenue of Americas
County, City New York
State & Zip Code NY 10036
Telephone Number 212-301-6000

II. **Statement of Claim:**

State as briefly as possible the <u>facts</u> of your case, including relevant dates and events. Describe how you were discriminated against. If you are pursuing claims under other federal or state statutes, you should include facts to support those claims. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A. The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

___ Failure to hire me.

_X_ Termination of my employment.

_X_ Failure to promote me.

___ Failure to accommodate my disability.

_X_ Unequal terms and conditions of my employment.

Rev. 05/2010

2

    X    Retaliation.

    X    Other acts *(specify):* a bias investigation

*Note:* Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.

B. It is my best recollection that the alleged discriminatory acts occurred on: _____ *Date(s)*.

C. I believe that defendant(s) *(check one)*:

    _____ is still committing these acts against me.

    _____ is not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

    ☒ race _____    ☒ color _____

    ☒ gender/sex _____    ☒ religion _____

    ☒ national origin _____

    ☐ age. My date of birth is _____ *(Give your date of birth only if you are asserting a claim of age discrimination.)*

    ☐ disability or perceived disability, _____ *(specify)*

E. The facts of my case are as follow *(attach additional sheets as necessary)*:

Attached

*Note:* As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.

III. **Exhaustion of Federal Administrative Remedies:**

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: August 17, 2015 *(Date)*.

Rev. 05/2010        3

B.  The Equal Employment Opportunity Commission *(check one)*:

   __X__  has not issued a Notice of Right to Sue letter.

   _____  issued a Notice of Right to Sue letter, which I received on _____ *(Date)*.

   *Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.  Only litigants alleging age discrimination must answer this Question.

   Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

   _____  60 days or more have elapsed.

   _____  less than 60 days have elapsed.

## IV.  Relief:

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: loss wages, mental anguish, medical and dental, economical damages, therapy, future wages, punative damages, an amount greater than $1,000,000.00

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 8 day of September, 2016

Signature of Plaintiff: Sona Semmsk

Address: 102-220 88th Street
Hollis, NY 11423

Telephone Number: 917-238-7486

Fax Number *(if you have one)*: _____

Rev. 05/2010

4



Advocates for Workplace Fairness

February 3, 2016

**By Overnight Mail:**

D.E. Young
Investigator
U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004

Re: *Maureen Walsh v. Fox News Network, LLC, No. 520-2015-03572*
*Lena Jemmott v. Fox News Network, LLC, No. 520-2015-03573*
*Hilda Correa-LaPolla v. Fox News Network, LLC, No. 520-2015-03574*

Dear Investigator Young:

This firm represents Maureen Walsh, Lena Jemmott, and Hilda Correa-LaPolla, the Charging Parties in the above-captioned matters. Enclosed for filing is the Rebuttal Statement on behalf of all three women in response to the Position Statement of Respondent Fox News Network, LLC ("Fox News" or the "Company") dated October 20, 2015 (the "Position Statement").[1] Mses. Walsh, Jemmott and Correa-LaPolla filed their charges of discrimination with the EEOC on August 17, 2015, alleging that Fox News had discriminated against them based on their gender and retaliated against them for complaining about the preferential treatment accorded to Bradley Stenson, the only Caucasian male in their department. In addition, Ms. Jemmott was also discriminated against on the basis of her race and Muslim religion.

## I.   BACKGROUND

As set forth in the three Charges filed by Mses. Walsh, Correa-LaPolla and Jemmott, all three women were successful and long-time employees at Fox News at the time Bradley Stenson entered the workplace as a full-time freelancer in 2013. Mr. Stenson – the only Caucasian male in the Hair and Makeup Department – quickly became the favorite of the Caucasian male managers of the department, Pete Flores and Jeff Hark. Despite demonstrably poor performance, Mr. Stenson was given preference over his female colleagues in terms of scheduling and other

---

[1]   Counsel for the Charging Parties and the Charging Parties received the Position Statement on January 11, 2016.

New York  3 Park Avenue 29th Floor  New York, NY 10016  Tel (212) 245-1000 Fax (646) 509-2060
Chicago  161 N Clark Street Suite 4700  Chicago, IL 60601  Tel (312) 809-7010 Fax (312) 809-7011
San Francisco  One Embarcadero Street 38th Floor  San Francisco, CA 94111  Tel (415) 638-8800 Fax (415) 638-8810

perquisites. Mr. Stenson spent long periods of time in Mr. Flores' office, and Mr. Flores openly referred to Mr. Stenson as his "spy" in the Department. In addition, evidence will show that Mr. Flores explicitly and specifically sought resumes for male Hair & Makeup artists, and asked stylist Erica Colon to seek men in the first instance when hiring.

Mr. Stenson created a hostile work environment for his female co-workers in the Hair and Makeup Department. He referred to women as "bitches" and "girls," and the Company's Human Resources Department will confirm that on June 24, 2014, Mr. Stenson displayed on his ipad a video of a transgender woman describing sexual acts in graphic language to Ms. Jemmott, Ms. Walsh and Kimberly Guilfoyle, one of the on-air personalities at Fox News. It appears that although this was reported to HR, no disciplinary action was taken against Mr. Stenson. Mr. Stenson also referred to the station's senior legal analyst, Justice Andrew P. Napolitano, as his "sugar daddy" and said that Judge Napolitano was "always coming on to [him]." Thus, while Charging Parties Correa-LaPolla and Walsh were fired for alleged "misconduct" involving the sending of *private text messages to their friends and co-workers using their private handheld devices*, Mr. Stenson's misconduct was brazenly open and well-known to the employees and management in the Hair and Make-Up Department.

The allegations with respect to Mr. Stenson are barely addressed in the Company's Position Statement. Instead, the Statement takes the posture that the best defense is a good offense. The "misconduct" alleged on the part of the Charging Parties, however, is the result of a biased investigation during which the Charging Parties were not even interviewed, and as to which the statements obtained were outlandish – in many cases, ridiculous -- and during which the relevant documents and texts were taken out of context long after they were sent and received.

## II.   REBUTTAL STATEMENT OF FACTS

One would think from reading the Company's Position Statement that the investigation that resulted in the termination of Mses. Walsh's, Correa-LaPolla's and Jemmott's employment began with the petty email sent by Janet Arena to Pete Flores on August 7, 2014. *See* Email, dated August 7, 2014, attached as Ex. A to Fox's Statement. When questioned about the incident, Ms. Walsh responded quickly, professionally, and appropriately. *See* Emails, Ex. 1 attached hereto. In Ms. Walsh's response, she also reported to Mr. Flores that Mr. Stenson was giving Ms. Arena a shoulder message in front of guests. (*Id.*)

### A.   Bradley Stenson's Confrontation with Ms. Jemmott on August 16, 2014

In fact, what initiated the investigation was Ms. Jemmott's reporting of a confrontation she had with Mr. Stenson during which Mr. Stenson raised his hand as if to strike her.

On August 16, 2014, Ms. Jemmott was late for work because her son, who suffers from lupus, was ill. Ms. Jemmott texted Erica Colon, the supervisor on duty that day, to let her know the status and when she expected to be in. Ms. Jemmott also spoke with Mr. Stenson, who was working that day. He expressed unhappiness that she would be late. Soon after her conversation

Investigator D.E. Young
February 3, 2016
Page 3 of 14

with Mr. Stenson, Ms. Jemmott received a text from Mr. Flores inquiring as to where she was. When she arrived at work, Ms. Jemmott asked that Mr. Stenson please stay out of her personal business. As Ms. Jemmott approached him, Mr. Stenson jumped up out of the chair he was sitting in and raised his open hand as if to slap Ms. Jemmott. Ms. Jemmott said, "Do not rise up on me, Bradley," several times. At that point, Mr. Stenson closed his hand and began pointing his index finger in Ms. Jemmott's face, screaming, "I am not in your personal business!"

Well aware that he was potentially in trouble for physically threatening Ms. Jemmott, Mr. Stenson immediately had Ms. Arena send an email to Mr. Flores complaining about his argument with Ms. Jemmott. (Ex. G to the Position Statement). Mr. Flores immediately texted Ms. Jemmott, telling her that Mr. Stenson was not the person who informed him that she was late. According to Mr. Flores, "Bradley only contacted you out of concern." A half hour later, Mr. Flores sent another text message to Ms. Jemmott saying that everyone had been concerned that she was not in and they did not know the entire story. Clearly, Mr. Flores was concerned that Ms. Jemmott would escalate the issue – which she did.

The next day, on August 17, 2014, Ms. Jemmott contacted Angela McGlowan, a political analyst at Fox News and the former Director of Diversity Development at News Corporation. Ms. Jemmott told Ms. McGlowan about the incident with Mr. Stenson.[2]

On August 19, 2014, when Ms. Jemmott had not heard back from anyone concerning what had transpired, she emailed Jeff Hark, Mr. Flores' supervisor, and reported the assault by Mr. Stenson on August 16. (Position Statement, Ex. H). According to Fox News, Messrs. Hark and Flores quickly spoke with Mr. Stenson to get his side of the story. (Position Statement, at p. 4). Mr. Stenson admitted that he had, in fact, jumped up from his chair close to Ms. Jemmott, but denied that he had raised his hand to her. (*Id.*) Only now that he was potentially in trouble – for the very first time ever – did Mr. Stenson complain that *"Karen and Hilda have been building a very toxic culture on the 12th [floor] that includes bullying and belittlement that is causing the 12th floor to become a very hostile place to work."* (Position Statement, Ex. I).

After discussing the matter with Mr. Stenson, Mr. Flores and Mr. Hark met with Ms. Jemmott. When Ms. Jemmott raised the issue of Mr. Stenson's conduct towards her, Mr. Hark said that there were witnesses who contradicted her version. However, there were only two witnesses present at the time of the incident -- Heather Gerchberg and Brandi Zimoyier. Ms. Jemmott then pointed out that there were cameras on the floor, and requested that Mr. Hark and Mr. Flores review the footage.[3] At this point in the meeting,

---

[2]   It appears that Ms. McGlowan was not interviewed as part of the investigation.

[3]   The investigation conducted did not include such a review of footage which would have disposed of the matter.

the discussion took an odd turn as Mr. Hark and Mr. Flores requested that Ms. Jemmott begin informing them as to what other employees in the Department were doing. When Ms. Jemmott returned to the subject of Mr. Stenson's assault, Mr. Hark sat beside her, rubbed her back, and said, "Maybe Bradley didn't try to slap you. Maybe when you came in, he was shocked and raised his open hands shaking them, and saying, 'Ahh!!!'" Ms. Jemmott responded that what she wrote in her email was accurate.

At the conclusion of Mr. Hark's email summarizing his and Mr. Flores' meetings with Ms. Jemmott and Mr. Stenson, he writes, "[m]uch more investigation is required in both cases [the case involving Ms. Jemmott's claims and the case involving Mr. Stenson's claims]." (Position Statement, Ex. I).

### B. The "Investigation" Conducted By Mr. Flores and Mr. Hark

It is somewhat unclear what "investigation" ensued, but Fox News claims that on August 22, 2014, Mr. Flores and Mr. Hark met with Stephanie Barr and Julia "Seven" Chaperon. (Position Statement at p. 4). Presumably Mr. Stenson asked those employees to contact Messrs. Flores and Hark because neither woman was a witness to the incident involving Mr. Stenson and Ms. Jemmott. It is clear from the email summary of the meeting that there was no inquiry into the incident that actually spawned both investigations as there is no discussion of Mr. Stenson's assault of Ms. Jemmott. Instead, it is clear that the "investigation" is now focused on Ms. Jemmott and -- all of a sudden -- Ms. Correa-LaPolla. (Position Statement, Ex. J).

At the time of this meeting, Stephanie Barr had worked with Ms. Jemmott for six years and with Ms. Correa-LaPolla for 18 years. Ms. Chaperon had worked with both women for six years. Now after 18 years working together, Ms. Barr allegedly reported that Ms. Correa-LaPolla had a "nasty and negative attitude" and complained that Ms. Correa-LaPolla had "aggressive" and "inappropriate" signs hanging in her work station. (*Id.*). A cursory review of the signs (which were in Ms. Correa-Lapolla's private space) makes clear, however, that there is nothing remotely offensive about them. *See* Position Statement, Ex. K ("The greatest advantage of speaking the truth is that you don't remember what you said"; "Trust is like an eraser, it gets smaller and smaller after every mistake," etc.). *Beyond that, these same signs had hung in Ms. Correa-LaPolla's station for a year or more without anyone -- whether it be an employee, manager, or Fox talent -- saying a single thing about them.*

Similarly, after working together for six years, Ms. Barr now claimed that Ms. Jemmott was "a very unstable and aggressive person." (*Id.*). Ms. Chaperon also stated that Ms. Jemmott was "unstable" and "extreme," and that she was "afraid of her." (*Id.*) There appears to be no explanation as to why, if these two long-time employees were so scary and unstable, no one had ever raised that issue before. That is because the statements were patently false – and Mr. Hark and Mr. Flores knew it.

Investigator D.E. Young
February 3, 2016
Page 5 of 14

      According to Fox News, Mr. Hark and Mr. Flores met with Jennifer Livingston a week later, on August 29, 2014. (Position Statement at p. 5). There is no dispute that this meeting was held at Mr. Stenson's behest. Again, clearly, there again was no discussion at this meeting of what really warranted investigation – Mr. Stenson's aggression towards Ms. Jemmott on August 16. Instead, the discussion revolved around two text messages Ms. Correa-LaPolla had sent Ms. Livingston several weeks earlier. (*Id.*)

      At no point during the investigation into Mr. Stenson's claims did anyone speak with Ms. Correa-LaPolla or review all of the texts sent between Ms. Correa-LaPolla and Ms. Livingston to obtain the appropriate context. According to the Company's conclusions, the texts Ms. Correa-LaPolla sent to Ms. Livingston were "threatening" and meant to "bully" her. When one reviews the messages between the co-workers in full, however, it is clear that Ms. Correa-Lapolla's texts were no more offensive than Ms. Livingston's and, in fact, reflect a friendly exchange that was typical between the two women. With respect to the exchange on July 13, 2014, the texts stated:

> Jennifer Livingston ("JL"): "I don't have a bucket list, but my Fucket list is a mile long! Yep."
>
> Hilda Correa-LaPolla ("HCL"): "Yes me too and all the assholes I work with!!!"
>
> JL: "Yesssssss!!!!! I got a guest banned from News & Business last week for telling me ON SET that my makeup brush was so cold that he thought his cunt lips were going to stick to it! Wtf????!!! Have u ever??? I am tired of the abuse that hair & makeup get in that place! OMG!!!"
>
> HCL: "Not talking about guests, talking about the assholes in makeup and hair!!! And you should never take shit from guests or anyone. If ever anyone talks to me I will own them!!!
>
> JL: "That's why I love you! You don't take no shit!!! Lol! Makeup and hair have quite a few assholes!!!! Got to shake that place off when I'm not there!!! Geez!!!"
>
> HCL: "Really!!!! Be careful who your friends are or co-workers. That's why Karen is my sister and if anyone fucks with her!!! Fucks with me!!!!! Don't care if it's my boss or anyone that is close to me blood is thicker than water!!!"
>
> JL: "Yes blood is thicker than water – I don't have a lot of friends in there. They are people I work with – I just do my job - & peace the Fuck out of there!"
>
> HCL: "Ha!"

*See* Ex. 2 attached hereto. This is the way these two women spoke with each other. Read in full context, Ms. Correa-LaPolla's texts are no more offensive or threatening than Ms. Livingston's. These were two friends having a purely personal conversation on their personal devices.

Investigator D.E. Young
February 3, 2016
Page 6 of 14

Similarly, the July 24, 2014 text exchange reads in full:

JL: "Girl, I just watched this now [video preacher speaking about not taking junk from a man] !!!!LMAO! It's the truth & wish my single friends would listen to this sermon, amazing!!!!"

JL: "My alone time is sometimes for your safety."

HCL: "Haha" and "yeah and some that are married too"

JL: [photo of ghetto swimming pool]"Lmao!!! I need a ghetto swimming pool! Yes – some married folk too – Lord knows I get some junk in my trunk! & I found a man who knows just how much!!! Lol!!!

HCL: "Hahahahaha"

HCL: " Hey girl girl people at Fox make me sick. Today I saw and heard so many assholes. Yeah you hang with all of them. Sick fucks they talk about each other and say the most awful shit then forget and suck each other ass out!!!"

JL: "Yeah – I get it – I am there 30 hours a week – not too much & not too little. The way I look @ it is…what people saying about me is none of my business & what goes around comes around!!! This I know for sure.

JL: OMG!!!Yesssssss!!!!

JL: Fox = psych Ward…Protect yourself!!!

JL: "hopefully people know that…If not…Well…Then…You know!!!"

JL: "Totally!!!!"

(Ex. 3, attached hereto). Again, there is absolutely no indication that Ms. Livingston felt "bullied" or "threatened" – that is because she was not being threatened. Again, this text exchange was sent and received on the two co-workers' personal devices - not on Fox News' property. It was a personal conversation, and not in violation of Company policy.

Beyond the specific conversations at issue, one can see from the texts that Ms. Livingston and Ms. Correa-Lapolla were friends and often texted each other in friendly, humorous, and often profane ways. In these texts Ms. Correa-LaPolla was not "threatening" Ms. Livingston – she was expressing her feelings and frustrations about the workplace – to a friend via her personal device. Friends and co-workers do this every day. Ms. Livingston did not provide the investigators with the full set of texts – and apparently the investigators did not seek them. (*Compare* Position Statement Ex. L & Rebuttal Exs. 2 & 3).

Apparently during this same meeting with Mr. Flores and Mr. Hark, Ms. Livingston stated that Ms. Jemmott is "very unstable at work, a loose cannon, and she feels that it is just a matter of time before Lena gets aggressive or violent with her. She brings a lot of her outside influence into the work place making this a very uncomfortable work place." (Position Statement Ex. M). First, these comments are overtly racist in referring to Ms. Jemmott's "outside influence," among other things. Moreover, again, through the several years that Ms. Livingston had worked with Ms. Jemmott, there was not a single act or suggestion of aggression or violence that Ms. Livingston could point to. Nor, does it seem, that the question was even asked. Mr. Flores and Mr. Hark took Ms. Livingston's discriminatory comments at face value – and so does Fox News in its Position Statement.

Finally, on September 5, 2014, Mr. Flores and Mr. Hark spoke with Heather Gerchberg, who had been present at the time of the incident between Mr. Stenson and Ms. Jemmott on August 16. (Position Statement, at p. 6). Ms. Gerchberg confirmed Ms. Jemmott's version of events that Mr. Stenson jumped up from his chair and the "conversation was very heated." (*Id.* at Ex. N). She said that Mr. Stenson was "speaking with his hands" [whatever that means] but she did not think he was doing so in a threatening way. (*Id.*) She also said that she got along with both Mr. Stenson and Ms. Jemmott and had never had a problem with either of them. Apparently, Ms. Gerchberg did not believe Ms. Jemmott to be "unstable," "aggressive," or "violent," but that fact appears nowhere in the Company's Position Statement.[4]

Mysteriously, even though Charging Party Maureen Walsh was not party to any of these events, Mr. Stenson's friend, Janet Arena, apparently drew Ms. Walsh into the vortex on September 16, 2014, when she emailed Mr. Flores asking whether he had spoken with Ms. Walsh about her email from August 7. (Position Statement Ex. O). As we know, Mr. Flores did get Ms. Walsh's position and said her response was "exactly what [he] was looking for." (Rebuttal Ex. 1). Now, Ms. Arena complained that Ms. Walsh was "giving [her] dirty looks." (Ex. O).[5]

That same day, Mr. Flores and Mr. Hark asked to meet with Ms. Correa-LaPolla. At this meeting, the men confronted her with the comments by Mr. Stenson's friends that she was "bullying" them. Contrary to what is set forth in the Position Statement, when Ms. Correa-LaPolla attempted to explain the context of the texts she sent to Ms. Livingston months earlier,

---

[4] It appears that Mr. Flores and Mr. Hark did not interview Brandi Zimoyier, the other employee identified by Ms. Jemmott as having witnessed Mr. Stenson's assault.

[5] As an example of how petty and baseless Ms. Arena's email was, although she claims that one of the reasons she quit working on Saturdays was because of Ms. Walsh's "bullying" and "acrimonious techniques," Ms. Arena worked Saturdays during the day and Ms. Walsh worked 6:00 pm until 10:00 p.m.

the men blew up and began screaming at her and would not accept her explanation.[6] *Also contrary to the Company's representations in the Position Statement, during this meeting, Ms. Correa-LaPolla explicitly complained that Mr. Stenson was being afforded preferential treatment on a number of levels because he was a man and that she and other women were being disfavored.*

The next day, on September 17, 2014, Mr. Flores and Mr. Hark met with Ms. Jemmott, ostensibly to report on the results of their investigation into her claims against Mr. Stenson. However, Mr. Hark started off the meeting by saying, that while Ms. Jemmott was often late to work, they "liked" her and wanted to keep her. He then went on to report that he had spoken with people in the office about the incident with Mr. Stenson on August 16. According to Mr. Hark, there were 10 employees who said that Ms. Jemmott was a bully, had a "bad attitude," and that every time she came to work people were "afraid" of her. Ms. Jemmott was stunned. When Ms. Jemmott tried to go back to her original email and discuss her original complaint that Mr. Stenson had raised his hand to strike her, Mr. Flores cut her off and began talking about changing her schedule.

Although this is nowhere mentioned in Fox News' Position Statement, within three or four days of her meeting with Mr. Hark and Mr. Flores, Ms. Correa-LaPolla asked to meet with Liza Cohen in Human Resources at Fox News to complain about the way that she had been treated during that meeting and to complain – again – about the preferential treatment afforded Mr. Stenson and his close relationship with Mr. Flores. At this meeting, Ms. Correa-LaPolla also presented Ms. Cohen with a dozen of letters of support and character references from her co-workers and talent at the station. *See* letters, Ex. 4 hereto.

### C. The "Investigation" Conducted by Dianne Brandi and Denise Collins

Clearly aware that Ms. Correa-LaPolla had gone to the Human Resources Department to complain about him, Mr. Stenson continued to work the system and at this point apparently complained to 21st Century Fox Global Compliance, on September 22, 2014. (Position Statement, at p. 7). The summary of Mr. Stenson's complaint is as follows: "Bradley said Karen [Corvelli] wrongfully took Rick from his station which resulted in an altercation between Bradley and Karen. Additionally, Hilda sent an inappropriate text to Jennifer regarding the incident, and Jennifer shared the text with other employees." (Position Statement, Ex. T, at p. 1). Interestingly, there is no mention in his complaint of the incident with Ms. Jemmott, and the complaint centers on a disagreement with a co-worker named Karen Corvelli, who was not disciplined and who apparently was not a subject of the Company's investigation. Several days later, Fox claims that Mr. Stenson supplemented his complaint, this time attaching personal photos and personal MMS messages that Ms. Walsh sent to him and other co-workers from her personal device. (Position Statement, at p. 7 and Ex. U). *Mr. Stenson and the others received these messages between May 5, 2014 and June 15, 2014 – more than three months before he*

---

[6] There is no memorandum setting forth what actually transpired at this meeting except for the "talking points" prepared prior to the meeting with Ms. Correa-LaPolla. (Position Statement, at Ex. Q).

*produced them to Corporate Compliance to "support [his] claim of hostile work environment and bullying." (Id.)*

  According to the Company, Dianne Brandi and Denise Collins from 21st Century Fox then "took command" of the investigation and interviewed 20 employees, many of whom had already been interviewed by Mr. Flores and Mr. Hark. (Position Statement at p. 8). None of the employees interviewed included the Charging Parties. Moreover, according to Fox News' Position Statement, 11 out of the 20 employees complained about the Charging Parties. (Id. at p. 2). Neither we nor the Commission know what any of the others said, but apparently they did not complain about the Charging Parties so they apparently were not relevant to the investigation. There were also a number of employees in the Hair and Makeup Department who were never interviewed at all.

  Although Ms. Brandi and Ms. Collins did not see fit to speak with any of the "targets" of their investigation prior to terminating their employment, on October 3, 2014, Ms. Jemmott approached Ms. Brandi and Ms. Collins to report discriminatory conduct within the Department, including (i) the discriminatory way in which the Stenson assault was investigated and handled; (ii) Mr. Flores' discriminatory treatment of her; and (iii) his preferential treatment of the only Caucasian male in the Department – Mr. Stenson.

  Within a month of Ms. Correa-LaPolla's complaint to Human Resources, and just 20 days after Ms. Jemmott's meeting with Ms. Collins and Ms. Brandi, on October 23, 2014, Ms. Correa-LaPolla, Ms. Walsh and Ms. Lemmott were all fired on the same day for alleged "misconduct." (Position Statement, at pp. 2, 4, 8). The "misconduct" attributed to Ms. Walsh was allegedly inappropriate photos and texts she sent to co-workers and friends from her personal iphone. (Id. at pp. 8-9). [7] In addition, Stephanie Barr told the investigators that she was afraid that Ms. Walsh and Ms. Correa-LaPolla "were going to physically hurt her," and that Ms. Correa-LaPolla was a "gang leader" and that she had given another employee "body checks." (Id. at p. 8). According to Fox News, Ms. Correa-LaPolla's "misconduct" included sending "threatening text messages" to a co-worker (again from her personal iphone device) and hanging "threatening" signs in in her work station. (Id. at pp. 4-5). Finally, according to Fox News' Position Statement, the "misconduct" that resulted in Ms. Jemmott's termination was that certain of her co-workers found her "mentally unstable," "a ticking time bomb," and that she "bangs on

---

[7]  Because Ms. Brandi and Ms. Collins never met with Ms. Walsh, they have no idea as to the significance – or utter lack of significance – of any of the personal MMS messages Ms. Walsh sent as jokes to Mr. Stenson and her other friends. For instance, (i) contrary to Fox's representation, the "photo" of Harris Faulkner and Brandi Zimoyier is not an actual photo of either of them; (ii) the photograph of Harris Faulkner on the red carpet had nothing to do with her looking "bottom heavy" – that is a creation of Fox News – the reference was only to her makeup; and (iii) the side by side photos of Beyoncé and someone who is NOT Brandi Zimoyier is a joke that simply refers to the fact that Beyoncé is Ms. Zimoyier's muse. *See* Position Statement, Exs. U & V.

furniture, throws things, spits out food, burps and farts, all in front of guests." (*Id.* at pp. 6&8).[8] These are the reasons given for the Charging Parties' immediate dismissal without any verbal or written warning.

As set forth above, at the time of her termination, Maureen Walsh had worked at the Company for more than 10 years. She had worked with complainant Janet Arena the entire time she was at Fox; complainant Jennifer Livingston for two to three years; Dawn Maloney for eight years; Stephanie Barr more than 10 years; Julia "Seven" Chaperon for six or seven years; Daniela Zivkovic, more than 10 years; Danielle Vignjevich, more than 10 years; and Lisa Mirante, for four years. Ms. Walsh brought complainant Vashti Jones-Williams into the Company and Ms. Jones-Williams had only been there a year in October 2014, when Ms. Walsh was fired.

Ms. Correa-LaPolla had worked for Fox for 18 years at the time of her termination. During that time, she had worked with complainants Arena, Halperin, Barr, Zivkovic, and Vignjevich for 18 years; Livingston for two or three years; Chaperon for six or seven years; and Mirante for four years.

Ms. Jemmott had worked at the Company for more than six years when she was terminated. She had worked with complainants Arena, Maloney, Halperin, Barr, Chaperon, Zivkovic, and Vignjevich the entire time she was employed. She had worked with complainant Livingston for two to three years, and Mirante for four years.

Prior to this "investigation" in 2014, and through all of these many years, there was never even a single mention of Ms. Walsh acting inappropriately or "physically threatening" people; of Ms. Correa-LaPolla being a "gang leader" and giving people "body checks"; or of Ms. Lemmott banging on furniture, throwing things, spitting out food, or burping or farting in front of guests. To the contrary, Ms. Walsh's reviews in recent years state, among other things, that:

- On each of the many of the many road trips Ms. Walsh was asked to attend in 2011, she "received compliments and accolades for her skill as a makeup artist and for her high level of energy and dedication to the shows" (Ex. 5, at p. 1);

- "Maureen's greatest strength is her friendly and outgoing personality. She makes everyone feel at home and comfortable." (*Id.*);

---

[8] The reason given for Ms. Jemmott's termination in the Position Statement is different from what she was told on October 23, 2014 – that she was being fired because she ate and cursed in front of guests. Ms. Jemmott is confident that Fox News has no evidence of any complaint by any guest that she did any of what she has been accused of. Beyond that, why would Fox News keep an employee for six years working with guests every single day who "bangs on furniture, throws things, spits out food, burps and farts, all in front of guests"? It's a ridiculous proposition and proves that these reasons are false and pretextual.

- "Reliability, good work ethic, dedication and sensible decisionmaking are all strengths that Maureen possesses" (Ex. 6, at p. 1).

Similarly, Ms. Correa-LaPolla's reviews and statements from co-workers and Fox News talent are equally incongruous with the Company's stated position that she was a "gang leader" who was "physically threatening" in the workplace:

- "Hilda is reliable and very flexible with changes to the schedule, particularly during this transition period. She has a wonderfully positive and engaging attitude" (Ex. 7, at p. 1).

- "She is very good with computers and consistently assists her coworkers with their computer needs, whether it be logging into our network, Fox Time, or emailing." (*Id.*)

- "Hilda is direct and blunt but above all, honest. She doesn't suffer fools gladly. In the H & M fiefdom where gossip is the currency of the realm, Hilda does not participate." (Ex. 8).

- "I have continued to be impressed by her loyalty, compassion and charitable pursuits, for example, one of our make-up artists Cynthia Fay was diagnosed with cancer, Hilda championed the cause on Cynthia's behalf for ovarian cancer research, raising a considerable amount of money." (Ex. 9)

- "Hilda cares deeply and passionately about the people in her life and her colleagues. That kind of loyalty and dedication is rare." (*Id.*)

- "Hilda does not participate in gossip nor does she allow it to be spoken in front of her. Things run much smoother when Hilda is here; she is truly a team player." (Ex. 10).

- "Hilda is more than a co-worker she is a true friend." (*Id.*).

### III. THE CHARGING PARTIES COMPLAINED ABOUT DISCRIMINATION

In its Position Statement, Fox News argues that Mses. Walsh, Correa-LaPolla and Jemmott do not have a viable retaliation claim because they "did not complain to Fox about sex discrimination," (Position Statement at Section G, p. 10). The Company then goes on, however, not to demonstrate that there was no protected activity, but only to attempt to prove that there was no basis for the women's claims that Mr. Stenson was given preferential treatment because he is a man. (*Id.*) The facts underlying the Charging Parties' discrimination claims will have to be developed during discovery, but there is no dispute that Ms. Correa-LaPolla and Ms. Jemmott complained to Mr. Hark, Mr. Flores, Ms. Brandi and Ms. Collins about the preferential treatment afforded Mr. Stenson based on his gender, and thus engaged in protected activity. Moreover, even in the absence of a viable discrimination claim, the women would still have a claim for retaliation so long as they suffered an adverse job action as a result of their complaints. *See, e.g.,*

*Wimmer v. Suffolf County Police Dep't*, 176 F.3d 125, 136 (2d Cir. 1999) ("a plaintiff may state a *prima facie* claim for retaliation even when her primary claim for discrimination is insufficient to survive summary judgment.").

### IV. FOX'S REASONS FOR TERMINATING THE CHARGING PARTIES' EMPLOYMENT ARE PRETEXTUAL

Discovery in this case will show that Fox News, like most other companies, has policies around employee conduct. However, the type of violations of Company policy that the Company states are grounds for discipline are: theft, violence, excessive absences, alcohol and substance abuse on Company time or premises, threats, and dishonesty. The Company policies around the use of computers and electronic devices only applies to Fox News equipment. There is no policy regulating an employee's use of her own handheld device when she communicates privately with another employee or a friend who is also using her own personal device. This was purely private conduct. Nothing that any of the Charging Parties violated Company policy.

Beyond that, the way the two "investigations" here were conducted is further evidence of discrimination and pretext. First, Ms. Jemmott's complaint was never taken seriously while Mr. Stenson's petty complaints about people giving each other dirty looks and ignoring each other in the workplace were apparently investigated like they involved the type of violence threatened by Mr. Stenson. Second, both investigations were informed by Mr. Stenson's list of witnesses and were directed with one goal in mind – to rid the Hair and Makeup Department of women who had complained about him and whom Mr. Stenson believed were "against" him. Third, the statements obtained by the investigators were plainly bogus and exaggerated as Mr. Stenson's friends reported that they were physically afraid of three women with whom they had worked side by side without incident literally for years – until Mr. Stenson appeared. Fourth, the allegedly threatening texts, signs, etc. that formed the basis for the Charging Parties' terminations were from months or years earlier – and no one had ever complained before or said they were fearful or "bullied." Mr. Stenson himself was extremely close with Mr. Flores and never complained at all – until he was on the hook. Finally, the allegations lodged against Ms. Lemmott, Ms. Walsh and Ms. Jemmott are wholly inconsistent with their written performance reviews, and any investigator seriously interested in getting to the truth would have seen that.

In addition, Fox News follows a progressive discipline policy, beginning with verbal counseling, followed by written warning, and ending with termination of employment as the third strike. Even assuming everything Fox News says in its Position Statement is true -- which it is not – there was no reason to peremptorily terminate three longtime female employees who were among the top performers in the Department and who had no prior disciplinary history. It makes no sense. Ultimately, Mses. Walsh, Correa-LaPolla, and Jemmott were fired for engaging in what was not actually misconduct, while Mr. Stenson was NOT disciplined at all for actually engaging in misconduct. That is the essence of actionable discrimination and retaliation.

Investigator D.E. Young
February 3, 2016
Page 13 of 14

### V.  MS. JEMMOTT HAS VIABLE CLAIMS FOR RACE AND RELIGIOUS DISCRIMINATION

As set forth in her Charge of Discrimination, Ms. Jemmott was also the victim of race and religious discrimination as the only black Muslim in the Department. Ms. Jemmott is African-American and a practicing Muslim. When Mr. Flores arrived in late 2009, he:

- Reduced the number of hours that Ms. Jemmott was regularly scheduled to work from a full time schedule of 40 hours per week to approximately 25 hours or less;

- Refused to grant Ms. Jemmott's request for a schedule that would accommodate her religious practices on Fridays between the hours of 11:00AM through 2:00PM, passing over Ms. Jemmott and providing less senior hairstylists the hours she had requested;

- Called Ms. Jemmott "picky" when she requested accommodation of her religious practices in scheduling; and

- Promoted less senior and less proficient stylists into staff positions while passing over Ms. Jemmott for such a position at the Company.

During her tenure under Mr. Flores, approximately 13 less senior hairstylists or makeup artists were either promoted to staff or provided with regular, consistent shifts.

In its Position Statement, Fox News admits that Ms. Jemmott is an extremely talented hair stylist, but says the only reason she has never been promoted to a full-time role is because of her "habitual lateness." (Position Statement, at p. 9). However, as noted in the Company's own evidence, Department member Heather Gerchberg admitted "there are a lot of people who come in consistently late." (*Id.* at Ex. N)

The Company offers as an example a time in 2012 when Ms. Lemmott was considered for a promotion, along with two white co-workers, Theresa Burney and Sindy Maragoni, both of whom are Caucasian. The two white women were promoted while Ms. Lemmott was not. The reasons listed by the decisionmakers are incredible: (i) "Has had problems with being late"; (ii) There are a few anchors that will not go to her"; (iii) "Questionable attitude"; (iv) "Has been accused of being lazy";[9] and (v) "Can be inappropriate. NC [no couth]." (Position Statement at p. 10).

The comments about Ms. Jemmott that the Company relied upon to terminate her employment are similarly racist and clearly related to her Muslim religion: that she was a

---

[9]   With respect to Ms. Jemmott's alleged "laziness," it should be noted that she often had the busiest schedule in the Department and was often scheduled late at night and then early the following morning.

Investigator D.E. Young
February 3, 2016
Page 14 of 14

"ticking time bomb"; that employees were "afraid of her"; that she was a "very unstable and aggressive person"; that she was "mentally unstable" and "extreme"; that she was a "loose cannon" and that it was "just a matter of time before Lena [got] aggressive or violent with her"; and, finally, that "she bangs on furniture, throws things, spits out food, burps and farts, all in front of guests." (Id. at pp.4, 6, & 8). If it was really just a matter of time until this black Muslim "ticking time bomb" got "aggressive and violent," how could she have worked with these co-workers in relative peace for six years until Mr. Stenson raised his hand to her? Similarly, is it really believable that she behaved in this way in front of guests and was never disciplined – or even spoken to about it? These comments are code words veiling the Company's discriminatory intent and make clear what really happened here. Ms. Jemmott's race and religion claims should not be dismissed.

                                          Sincerely yours,

                                          /s/ Darnley D. Stewart
                                          Darnley D. Stewart

cc:    Cynthia Gill, Esq.